**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PMB, JUVENILE MALE,

Defendant - Appellant.

No. 11-10405

D.C. No. 3:11-cr-08009-JAJ-1

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
John A. Jarvey, District Judge, Presiding

Submitted September 11, 2012**
San Francisco, California

Before: WALLACE, THOMAS and BERZON, Circuit Judges.

PMB, a juvenile defendant, appeals from his judgment of conviction for two

counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a),

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

2246(2)(A), and 5031–37.  Because the parties are familiar with the factual history of this case, we need not recount it here.  We reverse PMB's conviction and remand for further proceedings.

To establish a defendant's legal status as an Indian under 18 U.S.C. § 1153, the government must prove (1) that the defendant has "some quantum of Indian blood, whether or not that blood derives from a member of a federally recognized tribe, and" (2) that the defendant has "membership in, or affiliation with, a federally recognized tribe."  *United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc), *cert. denied*, 136 S. Ct. 1712 (2016).  "[T]he defendant's Indian status is an essential element which the government must allege in the indictment and prove beyond a reasonable doubt."  *Id.* at 1110 (quoting *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005)) (quotation marks and alteration omitted).

During trial, an FBI special agent testified that a document presented by the government was a certificate of tribal enrollment purporting to show that PMB had some quantum of Indian blood and was affiliated with the Navajo Nation.  The special agent testified from examining the document that it was issued by the Navajo Nation and that he felt a raised seal on the document.  The district court admitted the document without objection from PMB.  On appeal, PMB claims that

admission of the document was improper. We review for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). Under this standard,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. 258, 262 (2010) (citations and quotation marks omitted).

Admission of the document was plain error. We are bound by our holding in *United States v. Alvirez*, — F.3d — , 2016 WL 4073312 (9th Cir. Aug. 1, 2016).

First, it was error to admit the document. The government could not authenticate the document through the FBI special agent's testimony because the special agent did not meet the requirements set forth in Federal Rule of Evidence 902(2).[1] *See id.* at \*6. So the court must have treated the document as self-authenticating. But as we held in *Alvirez*, "Indian tribes are not listed among the entities that may produce self-authenticating documents," and thus it was error for

---

[1] Federal Rule of Evidence 902(2) allows public officers of entities listed in 902(1) to certify that the signature on a domestic public document is genuine and signed by someone with the official capacity to do so. But the Navajo Nation is not among those entities listed in Federal Rule of Evidence 902(1), nor did the FBI special agent testify that he was an official of the Navajo Nation.

the district court to admit the document as self-authenticating under Federal Rule of Evidence 902(1). *Id.* at *6.

Second, the error was plain, or obvious. The FBI special agent was not a tribal official of the Navajo Nation, but rather an employee of the United States; this much is obvious. His testimony plainly did not authenticate the document. Likewise, admission under Federal Rule of Evidence 902(1) was a plain, obvious error given our holding in *Alvirez*. This rule of evidence is unambiguous and must be applied as written. *Alvirez*, — F.3d — , 2016 WL 4073312, at *6 (citing *Gardenhire v. IRS (In re Gardenhire)*, 209 F.3d 1145, 1152 (9th Cir. 2000)); *see also Henderson v. United States*, 133 S. Ct. 1121, 1130-31 (2013) ("It is enough that an error be 'plain' at the time of appellate consideration for the second part of the four-part *Olano* test to be satisfied." (quotation marks, citation, and alterations omitted)).

Third, the error affected substantial rights. To affect substantial rights, "in most cases . . . the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734 (citations omitted). Unlike harmless error review, however, the defendant has the burden of persuasion. *Id*. at 734-35. PMB has met that burden here. As in *Alvirez*, PMB's "Indian status is at the heart of this matter." *Alvirez*, — F.3d — , 2016 WL

4

4073312, at *6. Also as in *Alvirez*, "[a]dmission of the Certificate allowed the government to establish both elements of Indian status. . . . Absent admission of the Certificate, it is questionable whether the government would have established . . . Indian status to the satisfaction of the jury . . . ."[2] *Id.* There was no other direct testimony that PMB had some quantum of Indian blood or was a member of a federally-recognized tribe. The government points to disparate parts of the record from which it argues that the district court, with some imagination, could have inferred that PMB had social standing as an Indian. *See Zepeda*, 792 F.3d at 1114. But this testimony did not establish that PMB had "some quantum of Indian blood," and it is hard to imagine that the district court would have concluded—on this record absent the document purporting to be an enrollment certificate—that the government proved beyond a reasonable doubt that PMB met either of the requirements for Indian status. A "defendant's Indian status is an essential element [of a § 1153 offense] which the government must allege in the indictment and prove beyond a reasonable doubt." *Id.* at 1110 (quoting *Bruce*, 394 F.3d at 1229). Because the improperly admitted evidence served to establish an essential element of the charged offenses, PMB has demonstrated that it is more likely than not the outcome would be different absent the improper admission. *See Alvirez*, — F.3d

---

[2] PMB's proceeding was a bench trial, but this does not affect our holding.

5

—, 2016 WL 4073312, at *6 (holding that "it was more likely than not that the admission of the Certificate materially affected the verdict").

Fourth, the plainly erroneous admission of the document seriously affected the fairness, integrity, and public reputation of the proceeding. As we have discussed, it is more likely than not that PMB would not have been convicted without the improperly admitted evidence. Further, this is not a case in which the remaining evidence of his Indian status is "overwhelming." *See Johnson v. United States*, 520 U.S. 461, 470 (1997). Because Indian status is an essential element of § 1153, its proof through improperly admitted evidence affected the fairness of the entire proceeding.

For these reasons, we exercise our discretion to correct the error. We reverse PMB's conviction and remand for further proceedings consistent with this decision. *See Lockhart v. Nelson*, 488 U.S. 33, 40 (1988); *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995).

**REVERSED and REMANDED**.